## BURNHAM & ux. v. PORTER.

A report, signed by three out of a committee of five appointed by the judge of probate in 1805, to assign dower, and a decree of the judge accepting that report, constitute a valid assignment of dower, though nothing in the report or on the record shew that the other two members of the committee acted.

The demandant in a writ of entry, being under age, and having an undivided share in the land demanded, was present with her guardian when a sale of the whole land was made, with warranty, to the defendant by the other tenant in common; and in consideration that a share of the purchase money should be applied by the other tenant in common towards a debt which he owed to her, promised verbally to convey her share to the defendant. She made no conveyance; but after she became of age, declared her intention to convey. *Held,* that she was not estopped to claim her share in the land.

A printed blank for the caption of depositions had a certificate of the oath of the witness prefaced, to be signed by the magistrate, and lower down, on the same page, a separate certificate of costs. The magistrate signed his name to the certificate of costs, but not to the certificate of the oath. *Held,* that there was no sufficient certificate to the oath of the witness.

*Held,* also, that the magistrate's signing the certificate of the oath, with leave of the court, after the deposition had been read on trial, would not make the evidence received competent.

WRIT OF ENTRY, dated August 21, 1849. The plaintiffs demanded one undivided eleventh part of a piece of land in Chester, which was set off to Abigail Hall, widow of Benjamin Hall, as her dower in the lands of her said husband.

Plea, *nul disseisin.*

It appeared that Benjamin Hall died seized of a farm in

Chester, of which the demanded premises were parcel, in the year 1806, and left the plaintiff, Dolly Burnham, and ten other children, his heirs at law, and Abigail Hall, his widow.

Abigail Hall remained on the farm with the children, without any partition or assignment of dower, until the 19th of April, 1814, when, on her petition for an assignment of dower, the judge of probate appointed Stephen Chase, Benjamin Chase, Abraham Towle, Benjamin Fitz and Jesse J. Underhill a committee to set off her dower.

On the 13th of March, 1815, Stephen Chase, Abraham Towle and Jesse J. Underhill made their report, that, being the major part of the committee, agreeably to their appointment they had set out the demanded premises as dower to Abigail Hall. The other members of the committee did not sign the report, nor did the report state whether they met and acted with the members who made the report.

The records of the probate court show, on the report of the committee, the following entry of a decree:

" Rockingham ss. April 18, 1815. I approve and confirm the within dower.

" Nat. Rogers."

The children that were of age, and the guardian of the minors, assented to this assignment of dower.

Afterwards, in 1815, Abigail Hall married Abraham Towle, and in that year they entered, in her right, into the land so assigned to her for dower, and continued to occupy it till the 11th of December, 1818, when they conveyed and quitclaimed the demanded premises to Samuel Hall.

On the 18th day of April, 1815, a committee having been appointed to make partition of the remaining two thirds of the land, and having reported that it ought not to be divided, and having assigned it all to Richard Hall, on his paying one hundred dollars to each of the other children, the judge of probate made a decree assigning the said two thirds to Richard Hall in fee simple.

In 1817, Richard Hall having failed to pay the sums decreed

to the other children, it was agreed and arranged, with the consent of the children who were of age, and of the guardian of the minors, that Richard should convey the land which had been assigned to him to Samuel Hall, and that Samuel should become responsible for the payment of those sums to the other children, and Richard conveyed to Samuel accordingly.

In December, 1818, Samuel Hall not having paid their portions to the other children, on the 15th day of that month gave his deed to David Porter, the defendant, conveying the whole farm, with covenants of warranty. As part of this arrangement, and to insure payment of their portions, the children who were of age gave Samuel Hall a quitclaim deed of their interest in the land assigned for dower, and the minors agreed by themselves and guardian to execute deeds of the same when they should become of age. Dolly, the plaintiff, also, after she became of age, told her guardian she would give a deed, but she gave no deed.

As the consideration of the deed from Towle and wife to Samuel Hall, Hall gave Mrs. Towle a bond to pay her an annual sum during her life. Towle and his wife remained in possession for a year after the conveyance to Porter, but it did not appear under what arrangement with Porter, except that Mrs. Towle was present, and also Dolly Hall, when Samuel Hall's deed was given to Porter. Porter paid for his conveyance $1770, of which $100 were paid to the guardian of Dolly Hall by Samuel, according to previous arrangement.

After Towle and wife left the premises, in 1819, Porter entered into the whole farm, and has held possession ever since.

Abigail Towle, the widow, died in April, 1844. The demandant, Dolly Burnham, was born February 15, 1800, and married to the demandant, Noah Burnham, in September, 1823.

The plaintiffs offered the deposition of Jesse J. Underhill; the defendant objected that the caption was not signed by the magistrate. The caption was a blank, in the usual form, containing a certificate of the caption, and a certificate of the taxation of costs, and was signed by the magistrate at the bottom, below the

certificate of taxation, but had no separate signature of the magistrate to the certificate of caption.　There was a certificate, signed by the magistrate, on the envelope in which the deposition was enclosed, that within were depositions taken and sealed up by him to be used in this cause.　The court admitted the deposition, subject to the defendant's exception.

The plaintiff moved that the magistrate have leave to amend the caption by signing the certificate of the oath and caption, which motion the court allowed *de bene esse,* and the magistrate amended the caption accordingly after the trial.

The court directed a verdict for the demandants, which the defendant moved to set aside.

*J. S. Wells,* for the defendant.

1. Mrs. Towle had no estate in the land in question until dower was legally assigned.　*Johnson* v. *Morse,* 2 N. H. Rep. 49; 4 Kent's Com. 61.

2. There was no legal assignment.　If at that time the judge of probate had authority to appoint a committee, all should have been present at the examination, to render the acts of the three legal.　*Farwell's Case,* 2 N. H. Rep. 124; *McInrory* v. *Benedict,* 11 Johns. 402; *Green* v. *Miller,* 6 Johns. 39; *Towne* v. *Jaquith,* 6 Mass. 46; *Short* v. *Pratt,* 1 Mass. 496; *Carpenter* v. *Wood,* 1 Met. Rep. 409.

3. If the assignment be considered valid, still the plaintiffs are estopped from claiming a portion thereof.　The defendant purchased the whole farm, including what is claimed as dower. Mrs. Burnham, then nineteen years of age, and her guardian were present, and saw the defendant pay the equivalent and receive a warrantee deed.　Mrs. Burnham—and the others assenting and agreeing that their brother Samuel should so sell the farm—agreed to sign when she became of age, and received $100 of the purchase money, and reäffirmed this assent after she became of age.　Her husband should be estopped from setting up any right to the land now.　*Runlett* v. *Otis,* 2 N. H. Rep. 167; *Hamblett* v. *Hamblett,* 6 N. H. Rep. 333;

*Morse* v. *Child*, 6 N. H. Rep. 521; *Nivan* v. *Belknap*, 2 Johns. 574.

Minors can do many acts which shall be binding after majority, unless dissented from in a reasonable time. The deed of an infant is not void, but voidable. *Roberts* v. *Wiggin*, 1 N. H. Rep. 73.

A deed is the written evidence of the assent of a party to the transfer of his title. An assent to another's conveying the estate for a full consideration, *as his own,* justly estops the assenting party from claiming the estate. This should control minors as well as adults, provided at full age they affirm or reäffirm the former act. And our decisions assume that a person shall be held to acts done when under age, if his subsequent assent thereto be proved or fairly presumed. *Aldrich* v. *Grimes,* 10 N. H. Rep. 194; *Hoitt* v. *Underhill,* 10 N. H. Rep. 220; *The State* v. *Dimick,* 12 N. H. Rep. 194; *Robbins* v. *Eaton,* 10 N. H. Rep. 561.

Mrs. Burnham distinctly reäffirmed her assent to the conveyance after she became of age, and expressed her willingness to deed as she promised her brother about the time he conveyed to Porter.

The oath to the deposition of Underhill was not certified according to Rev. Stat. 380, 381.

*French,* for the demandants.

1. The defendant's exception that the report of the committee who assigned dower was made but by three of the five members, is answered by reference to the act of 1789, then in force, by which a "major part" are authorized to act. Statutes, Ed. of 1815, p. 208, § 4.

This statute has always been construed to extend to the assignment of dower. *Richardson,* C. J., *Pinkham* v. *Gear,* 3 N. H. Rep. 167.

Again: This defendant, claiming under Samuel Hall, is estopped to deny the widow's estate—said Samuel having taken a deed of her and her second husband, conveying said estate.

Burnham *v*. Porter.

· Again : This assignment was valid as a *parol* assignment. The
case finds that the children and guardians assented to it; that
the widow entered and occupied; was in possession when this
defendant purchased, and continued a year afterward; and that
she was present when Porter took his deed.  *Pinkham* v. *Gear*,
3 N. H. Rep. 168.

But the exception to the assignment of Mrs. Towle's dower is
only material to fortify the defendant's title by *possession*, be-
cause the plaintiffs have the same title to their share, whether
the dower were legally assigned or not.  The defendant can gain
no title by possession, unless that possession were *adverse* to the
plaintiffs' claim.  Now it is clear that the defendant recognized
the dower as rightly assigned, for the widow was in possession,
and remained a year after he purchased, and was present when
he took his deed.  His *entry* was, therefore, not adverse to her
right, and his possession is *presumed* to have been in accordance
with his entry, and in subserviency to the true title.  *Lund* v.
*Parker*, 3 N. H. Rep. 49 ; *Straw* v. *James*, 9 N. H. Rep. 402.

2. The plaintiffs are not *estopped* to claim their land.  Had
Dolly Hall been of age when the defendant took his deed, she
would not have been estopped upon any principle recognized in
law.  "As part of this arrangement," without any fraudulent
concealment of title, or any misapprehension of facts, the de-
fendant took his deed, relying on an agreement by the guardian
and ward that upon some terms or other, which do not appear,
the ward would give a deed.  The remedy of the defendant is
upon the agreement.  An agreement to convey cannot, at law,
be regarded as a conveyance.  This agreement was not regarded
as effectual to pass the title, because it was an agreement to give
a deed *in futuro*.

This agreement has not been repudiated or denied, because it
appears by the case that Dolly told her guardian, after she was
of age, that she would give a deed.

This agreement may perhaps prove to be void for want of
consideration, unless something further appear than the case
shows; for by the decree of the judge of probate each heir

was to receive $100 for his share of *the two thirds,* and it appears that Dolly received no more than that amount. If she agreed to convey her reversionary interest, without consideration, the agreement would not be valid.

Again : If upon sufficient consideration she and her guardian agreed to convey, she could not be estopped to claim her land, *because she was a minor.*

. The whole policy of the law in regard to infants would be overthrown, were such an agreement to work an estoppel. The law protects the rights of infants, so that the conveyance in solemn form by a guardian, unless under license of a court of probate, and at auction, by the strict statute rules, would be void.

The infant himself can make no conveyance, because he is presumed incompetent to contract. If, then, the *deed* of the guardian and ward be ineffectual to pass a title, would it not be absurd to hold that their parol agreement would operate as a conveyance ?

If the conveyance by a guardian, which is of no effect, be rendered valid, by way of estoppel, by the assent of the ward, then every object of the statute which provides so strictly for the protection of the ward against the fraud or indiscretion of the guardian, is defeated, and the guardian may evade the statute at pleasure. The case only finds that the "minors agreed by themselves and guardian to execute deeds when they should become of age," and that Dolly "was present" when the defendant took his deed. The presumption of incapacity to understand the nature and effects of contracts, or other acts, is by no means rebutted. A guardian may have his ward *present* at any act of his, for he has the control of the ward's person ; and no waiver can be presumed, and no estoppel can result from the act or omission of a person presumed incapable of legal action in regard to the subject.

The presence of the ward, and of Mrs. Towle, her mother, who was then in possession, and whose possession was notice, as well of the claim of the reversioners as of her own, disproves

Burnham *v.* Porter.

the idea of any fraud or concealment, or ignorance of title on either part. It also rebuts any presumption that the possession of this defendant was adverse to the right of this plaintiff and the other heirs. The entry of an infant fourteen years old is presumed to be in his own right. *Riley* v. *Jameson*, 3 N. H. Rep. 23.

3. The defendant objects that the caption of the deposition of Jesse J. Underhill, read by the plaintiff, was not properly signed by the magistrate.

There is no form of certificate prescribed by the statute. See chap. 188, § 20. The case finds that the magistrate signed the caption but once, when the printed form which he used had blanks for two signatures. A signature at the bottom of the page surely must be taken to relate to all that precedes it on the same page, unless there be some special provision of law, or apparent reason for a limitation of the operation of the signature to one portion. It is not usual to sign each clause of a will, or contract, or deed, however diverse the different parts may be. The magistrate's certificate upon the envelope aids the presumption that his certificate on the caption relates to all the facts contained therein.

But the subsequent amendment of the caption is conclusive. The caption is evidence for the *court*, not for the *jury*. The admissibility of the deposition as evidence for the *jury*, depended on the *fact* that it had been legally taken, and not upon the mode of proof, or the *time* of proof of that *fact* to the court.

PERLEY, J. The statute of 1789, which remained in force till 1822, provides as follows: " The judge of probate shall appoint five freeholders to make distribution of the real estate, which being made and returned to the judge, under their hands, or the major part of their hands, upon oath to their impartiality therein, and accepted and allowed by said judge, shall be valid." Statute of 1789, § 4 ; Laws, Ed. of 1815, p. 208.

This statute has always been held to authorize the judge of probate to cause partition to be made among heirs, and dower

to be assigned to the widow. *Pinkham* v. *Gear*, 3 N. H. Rep. 167.

In this case five freeholders were appointed on the committee; a report was made and signed by three of them, which the judge accepted and allowed. This, it is to be observed, brings the assignment of dower within the literal provision of the statute. But the defendant contends that the intention of the statute must have been to require all the members of the committee to act, though the report of three was sufficient. Nothing in the record shews whether the other members of the committee acted, and no other evidence was offered on that point.

It would seem probable that a statute on such a subject, which had continued to be the law of the State for more than thirty years, must have received a settled practical construction which ought not now to be disturbed. The court have taken the liberty to make inquires of the Hon. Charles H. Atherton, whose large general practice and long official connection with the probate court have made him extremely familiar with all questions relating to this branch of the law in New-Hampshire. Mr. Atherton has been obliging enough to communicate the information that we desired; from which it appears that in Hillsborough county numerous reports of committees appointed under the statute of 1789, and signed by three, and by four of the five members, were accepted and allowed by the judge, and in no instance is any statement found in the report, or any memorandum on record, to shew whether the other member or members acted. Mr. Atherton is not able to say when or how this practice originated, but conjectures that it commenced under the provincial statute. He says that it continued down to 1822, though cases where part only of the committee reported were not so numerous after 1815.

It would seem, therefore, that this assignment of dower was made according to the practice established under the statute then in force, and we think it must be held to be valid.

The assignment of dower being valid, the plaintiffs are not barred by the statute of limitations, because their title did not

Burnham *v.* Porter.

accrue till the widow's death in April, 1844. Till that time the defendant held under his conveyance from the widow of her life estate.

The authorities cited to shew that the plaintiffs are estopped to set up the title of Dolly Hall, because she stood by and saw the sale made to the defendant without objection, do not appear to be in point. They apply to a case where a man, claiming to own land, and having an apparent right to sell, conveys the land, and one having a conflicting and secret title, stands by and encourages or permits the sale, without disclosing the secret title which he afterward undertakes to set up. *Wilton* v. *Harwood*, 23 Maine 131.

In this case the demandant's title was not concealed when the defendant purchased. On the contrary, it was not only stated at the time, but Dolly Hall and her guardian then promised to convey it to the defendant. The defendant was not deceived by any misrepresentation or suppression of the facts, but he relied on a promise which has not been performed, and which, not being in writing, is void under the statute.

If the promise had been in writing, and on sufficient consideration, it would have been binding, providing the party making it had legal capacity to contract; but even in that case the promise to convey would not be a conveyance; it would give no legal title to the land, and could not be set up to defeat this suit at law.

The plaintiffs do not in this case seek to recover by rescinding or repudiating a contract. They claim by descent from their ancestor, and not under the defendant, or by virtue of any contract made with him. Wherever a man had made a verbal contract for land, on sufficient consideration, he could hold the land under the verbal bargain, if the defendant can do it here. To admit such a doctrine would wholly supersede the statute, which requires conveyances of land to be in writing.

Nor is this at all like the case where a party disputing a will seeks to recover a legacy under it. The plaintiffs claim nothing under the defendant, or under any contract or arrangement with him.

There is no ground of fraud on which the plaintiffs can be estopped to claim the land. According to the case made by the defendant, they have simply broken a verbal contract to convey the land.

Where one has paid the price of land on a verbal agreement for a purchase, and has entered with the assent of the owner and made improvements, the case is taken out of the statute, which requires the contract to be in writing, and courts of equity will decree a specific performance of the verbal contract. *Newton* v. *Swasey*, 8 N. H. Rep. 14; *Tilton* v. *Tilton*, 9. N. H. Rep. 385. But even in such a case there is no conveyance, and the legal title remains in the former owner.

It is not necessary in this case to decide whether here is evidence of a contract which the defendant could enforce in equity. There would, however, be obvious difficulties in his way. The defendant had an estate for life, and a right to enter into the land under that title, and his entry would be presumed to be according to his title, certainly till the contrary were shewn. He needed no assent of the plaintiffs to warrant his entry and subsequent possession. Dolly Hall was an infant, and had no legal capacity to assent nor to make the bargain, and her guardian having no license to sell, had no authority to bind her by his assent. The bargain, when made, was clearly not binding on Dolly Hall. It would not be easy to find in the case a legal consideration for the promise of Dolly Hall to convey. Nothing was paid to her or her guardian as the price of the land. What the guardian received he received from Samuel Hall in discharge of the debt that Samuel Hall owed his ward. Securing the payment of this doubtful debt might have been a sufficient consideration if Dolly Hall had been of capacity to agree; but she received no more than her due, and the guardian had no power to bind her by an undertaking to convey her land.

If a legal consideration for the promise of Dolly Hall can be found in the case, her declaration made to her guardian that she would convey, is not sufficient to ratify the promise of an infant. It was a mere declaration to a third person. *Orvis*

v. *Kimball*, 3 N. H. Rep. 314; *Hoit* v. *Underhill*, 9 N. H. Rep. 436.

But the verdict must be set aside for the admission of Underhill's deposition. A will written on several sheets of paper, and signed only on one, has been held to be sufficiently executed; but a will is an entire thing, and signing it in one part might well be understood as a signing and execution of the whole. But in this case there were two independent blank certificates, each proper to establish a separate fact. It would by no means follow that signing one of them was intended as an authentication of the other.

The certificate is an official document, and ought to be in such form as to exclude doubt. In *Regina* v. *Shipston*, 8 A. & E. N. S. 119, the court say that nothing is easier than to have their documents in regular form, and to avoid all questions. And in *Holte* v. *Routen*, 4 Johns. 130, the following language is used on this subject: "The manner of executing the commission ought not to be left to inference, but should be plainly and explicitly stated. It would be an inconvenient precedent, and might lead to great abuse, to establish the validity of such loose and informal returns." The case of *Powers* v. *Shepard*, 1 Foster's Rep. 60, shows that much exactness is required in the jurat certified on an affidavit. We think that signing one of these blank certificates can not be taken by the court to be a signing of the other.

Nor will the subsequent amendment by the magistrate remove the objection. If the deposition should be offered on a future trial, the certificate is now sufficient, and the deposition would then be competent. But when offered on the former trial, it was not taken according to the statute which requires the magistrate to certify the oath; and his certificate is the only evidence that can be received. *Amory* v. *Fellows*, 4 Mass. 219. The making of the certificate is not merely evidence of what the magistrate did; it is one of the things which the statute requires him to do, and until that is done there is no deposition taken according to law.

Burnham *v.* Porter.

This is different from evidence of the magistrate's official qualification. If he was in fact a magistrate, and has done all that the law required, the deposition is complete. Evidence of his official capacity is collateral, not required to be in the caption of the deposition, and, being addressed to the court, may be supplied after trial.

*Verdict set aside.*